UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL JONES,

          Plaintiff,

    -v-

ANNIE MANE McGRATH, *Deputy
Commissioner*, JOSEPH FRANCHINI,
*Assistant Commissioner*, JOHN
DOE/JANE DOE, *Movement and Control
Officer*, JAMES THOMPSON,
*Superintendent*, JOHN DOE/JANE DOE,
*Collins Movement Officer*, P.
ZACCAGNINO, *Deputy Superintendent*,
SZALUZZI, *Correction Officer*,
WENDLAND, *Superintendent*, ROY P.
SNYDER, *Deputy Superintendent*, RENE
M. LAWRENCE, *Sergeant*, REBECCA
GARLINGHOUSE, *Steward*,
ALEXANDER C. MELNICK, *Correction
Officer*, CATE, *Correction Officer*,
ANTHONY J. ANNUCCI, *Commissioner*,
M. HUGHES, *Inmate Accounts, Ulster,*
and EILEEN M. NEIF, *Supervising
Budget Analyst, DOCCS*,

          Defendants.
_____

20-CV-1417S
DECISION and ORDER

## **INTRODUCTION**

*Pro se* Plaintiff, Daniel Jones, a sex offender and civil detainee held under New

York's Article 10 civil-confinement statute[1] at the Central New York Psychiatric Center,

filed this action seeking relief under 42 U.S.C. § 1983.   Docket Item 1 ("Complaint").

---

[1] Providing for continued detention of recidivistic sex offenders.  *See* Mental Hygiene Law § 10.01 *et. seq.*

Plaintiff also seeks permission to proceed *in forma pauperis* (Docket Item 2), and requests reconsideration of the administrative closure of this action.  Docket Item 5.

Plaintiff alleges that, during his prior confinement at the Collins Correctional Facility ("Collins"), Defendants violated his rights when they denied him direct transport to the Central New York Psychiatric Center ("CNYPC"), where he was to be held under Article 10.  He alleges that some of his property was destroyed before transport and some was lost during shipment, in violation of his rights as a civil detainee, as more particularly set forth in the Complaint.  For the reasons discussed below, the Complaint will be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), unless Plaintiff files an amended complaint as directed.

## DISCUSSION

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a), he is granted permission to proceed *in forma pauperis*, and the Clerk of Court is directed to reopen this case.  Under 28 U.S.C. § 1915(e)(2)(B), this Court must screen this Complaint.

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted, or (2) seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the court will afford a pro se plaintiff an opportunity to amend or to be heard

before dismissal, "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted).  But leave to amend pleadings may be denied when any amendment would be futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### I.  The Complaint

In evaluating the Complaint, the Court must accept all factual allegations as true and must draw all inferences in Plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  "Specific facts are not necessary," and a plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' "  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) (discussing pleading standard in pro se cases after *Twombly*: "even after *Twombly*, dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases").  Although "a court is obliged to construe [pro se] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted pro se must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure.  *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004).

### II.  Section 1983 Claims

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and

3

(2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command.  *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Moreover, the theory of respondeat superior is not available in a § 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  But a supervisory official can be found to be personally involved in an alleged constitutional violation in one of several ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

### III.    Plaintiff's Allegations

The allegations of the Complaint, presumed true at this stage of the proceedings, tell the following story.  In 1992, Plaintiff was convicted of burglary in the second degree,

sexual abuse in the first degree, and attempted rape in the first degree, and sentenced to a period of 10 to 20 years in prison.  Complaint at 3 ¶ 19.[2]  Plaintiff was held to his maximum expiration date, but before he was released, he was found to be a dangerous sex offender requiring civil management and was therefore ordered transferred to the Office of Mental Health ("OMH").  *Id.* ¶ 20.  But instead of being transported directly from Collins to CNYPC, Plaintiff was "sent on a six day journey across the State of New York" beginning on November 30, 2017.  *Id.* ¶ 23.  The drive to the CNYPC OMH facility was less than four hours had Plaintiff been driven there by himself and directly, but the trip via Department of Corrections and Community Supervision ("DOCCS") standard group transport took six days and involved seven prisons.  *Id.* ¶ 24.

When he departed Collins, Plaintiff was advised by Defendant Szaluzzi that he was limited to four bags of personal property.  *Id.* at 5 ¶ 25.  Plaintiff was not permitted to bring the food he had recently received from his family, nor was his family permitted to retrieve the excess property beyond the four bags.  *Id.* ¶¶ 26-27. In destroying Plaintiff's property, Szaluzzi violated DOCCS procedure and punished Plaintiff for being a civilly committed sex offender.  *Id.* at 6 ¶¶ 27-28.

On December 1, 2017, Plaintiff was shackled to an inmate and placed on the transit bus to the Wende Correctional Facility ("Wende").  *Id.* at 6 ¶ 30.  He received a bag lunch and had to eat while handcuffed.  *Id.*  He was then transported to the Auburn Correctional Facility ("Auburn").  *Id.*  During the 4-hour trip, none of the inmates or detainees were permitted to talk, and Plaintiff's handcuffs were painfully tight, which prevented him from washing his hands after urinating.  *Id.* at 7 ¶ 31.  At Auburn, Plaintiff requested and

---

[2] http://nysdoccslookup.doccs.ny.gov

received medical attention, but the pain medication that was ordered never arrived. *Id.* ¶ 32. Plaintiff was housed at Auburn from Friday until the next draft bus left on Monday, denied showers and exercise, and his cell was cold due to open or broken windows. *Id.* at 8 ¶ 33.

On Monday, Plaintiff was strip searched, handcuffed, shackled to "another inmate" and transported to Elmira Correctional Facility ("Elmira"). *Id.* ¶ 34. At Elmira, Plaintiff remained on the bus, which then transported the occupants to the Downstate Correctional Facility ("Downstate"). *Id.* ¶ 35. The transit bus arrived at Downstate after nine o'clock in the evening, and Plaintiff was then transported by another bus to the Ulster Correctional Facility ("Ulster"). *Id.* at 9 ¶ 36. Plaintiff arrived after 4:00 a.m., was seen by medical staff and provided with clean underclothes and a toothbrush and a chance to wash up, though not a shower. *Id.* ¶ 38. At 10:00 a.m. the next day, Plaintiff was again shackled to an inmate and transported to the Midstate Correctional Facility ("Midstate"). *Id.* ¶ 39. When he arrived after 2:00 p.m., his shackles and handcuffs were removed, and he was again seen by medical personnel. *Id.* at 10 ¶ 40.

At Midstate, Plaintiff saw only three bags of his property and reported the missing fourth bag. *Id.* "The officer said that was all the Ulster bus provided and he would look into it." *Id.* Plaintiff was permitted to shower and wash his underclothes, but had no dry clothes to wear thereafter. *Id.* Further, "Plaintiff had been unable to call his family for five days as his phone had been deactivated." *Id.* The following day, Plaintiff was again strip-searched for the trip to the CNYPC, and he was informed that his fourth travel bag had not been located. *Id.* ¶ 41. On arrival, Plaintiff was permitted to shower and provided with new clothing. *Id.* ¶ 42.

6

On December 10, 2017, Plaintiff began efforts to address the property that was destroyed when he left Collins by writing to Defendant Thompson, Superintendent of Collins, requesting compensation.  *Id.* ¶ 44.  The response was delayed, and Plaintiff's claim was untimely.  *Id.* at 11 ¶ 45.  Plaintiff's fourth bag of property was never located, having apparently been lost at Ulster, and a claim was submitted on March 19, 2018.  *Id.* ¶ 46.  This was denied by Defendant Garlinghouse, Steward at Ulster, who wrote that the fourth bag was received separately and sent on December 7, 2017.  *Id.* at 12 ¶ 47. Documents indicated that "on[e] bag of Plaintiff's property at Ulster was sent to Collins." *Id.* ¶ 50.  Plaintiff appealed the denial and contested the claim that the fourth bag was sent to Collins, and eventually was awarded compensation in the amount of $100.00.  *Id.* at 14 ¶ 57.  Plaintiff rejected the offer and filed a claim with the New York Court of Claims on July 17, 2018.  *Id.*

Plaintiff alleges numerous violations of his constitutional rights.  He alleges that Defendant Annucci "failed to create a policy or procedure for transfer of inmates who are civilly committed under Article 10," in violation of Plaintiff's Fourth, Fifth, Eighth, and Fourteenth Amendment rights.  *Id.* ¶ 61.  As a result, Plaintiff was held for six days beyond the completion of his sentence, while others transferred to OMH arrive within 24 hours per DOCCS directives.  *Id.* at 15 ¶¶ 63, 65.

Defendants McGrath and Franchino, responsible for movement and control, "authorized the transfer of Plaintiff that was not in accordance with DOCCS policy of transferring inmates to OMH" within 24 hours.  *Id.* at 16 ¶ 73.  These Defendants, as well as John or Jane Does involved in movement and control, subjected Plaintiff to cruel and unusual punishment as well as six additional days in custody.  *Id.* at 16-17 ¶¶ 75, 79.

Collins Superintendent Thompson, "failed to transfer Plaintiff immediately to an OMH facility in accordance with DOCCS policy and procedure." *Id.* at 17 ¶ 81. Further, Defendant Thompson should have known that Plaintiff's property was improperly destroyed. *Id.* at 18 ¶ 83. Likewise, Defendant Zaccagmino, Deputy Superintendent of Collins, failed to respond to Plaintiff's letter in a timely manner, which was "deliberate and intentional to deny plaintiff's right to recover damages." *Id.* ¶ 85. Defendant Saaluzzi illegally seized and destroyed Plaintiff's property at Collins. *Id.* ¶ 87.

Defendant Wendland, Superintendent of Ulster, should have known of his subordinates' loss of Plaintiff's property bag; he "conspired with other defendants" to cover up the loss of Plaintiff's fourth bag; and "he failed to correct and discipline his officers for their illegal conduct." *Id.* at 19-20 ¶ 94. Deputy Superintendent Snyder also failed to discipline his subordinates and instead conspired to cover up the loss of the bag (*Id.* at 20-21 ¶¶ 99, 101), as did Sergeant Lawrence (*Id.* at 21 ¶¶ 103, 105), Corrections Officer Melnick (*Id.* at 22 ¶ 107), Defendant Garlinghouse (Id. ¶ 109) and Defendants Cate, Hughes and Neif. *Id.* at 22-23 ¶¶ 111-119.

Plaintiff alleges that Defendants' actions are part of an ongoing practice in the treatment of inmates transferred to OMH housing, which Plaintiff has learned from conversations with "numerous residents" at the treatment facility. *Id.* at 20 ¶ 95. Residents at CNYPC have "no meaningful remedy to recover or make claims against DOCCS regarding their lost or missing property." *Id.* at 24 ¶ 121. Plaintiff seeks injunctive relief as well as compensatory and punitive damages. *Id.*

IV.    **Analysis**

   **A. Claims Regarding Plaintiff's Six-Day Transport**

Plaintiff claims that he was subjected to six days of transport in the DOCCS system rather than being driven directly to his new OMH facility, some four hours away.  He alleges that this constitutes improper punishment of a civil detainee.  He alleges that the transportation chosen was both too slow (no transportation was done on the weekend, resulting in a Friday to Monday stay at one facility) and unreasonable (one day's transport continued well past midnight).  Further, as a transient detainee, Plaintiff had no access to showers, limited access to alternate means of addressing his hygiene needs, and he received sub-standard food, typically a bag lunch.  Plaintiff was also denied use of his personal phone, which was deactivated during transport.

As a civil detainee, Plaintiff's claims of unconstitutional conditions of confinement must be analyzed in a due process context, that is, "whether the conditions amount to "'punishment' without due process in violation of the Fourth Amendment."  *Lareau v. Manson*, 651 F.2d 96, 103 (2d Cir. 1981) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  As with a pretrial detainee, the issue to be decided is

> whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. . . Thus, if a particular condition or restriction of [] detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'  Conversely, if a restriction or condition is not reasonably related to a legitimate goal–if it is arbitrary or purposeless–a court permissibly may infer that the purpose of a governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

*Bell*, 441 U.S. at 538-39 (citations omitted).

The use of the existing system of secure transport rather than an individual transport of Plaintiff had a clear and legitimate purpose, the efficient use of scarce resources.  The decision to transport Plaintiff in the existing DOCCS prisoner transport system was not sufficiently harmful to show deliberate indifference.  Defendants

> following the standard policy for safely transporting prisoners, [shackled plaintiff] causing [him some] discomfort in the process. While this was perhaps unsympathetic to [his] pain and suffering, it was not the type of 'malicious and sadistic' behavior giving rise to a constitutional claim for excessive force, because [defendant] was simply following a sensible policy on securing inmates and was not attempting to cause [plaintiff] pain

*Harding v. City and County of San Francisco*, 602 F. App'x 380, 382-83 (9th Cir. 2015) (securing plaintiff despite having accidentally severed his finger when a transport door was closed on plaintiff's hand).

Nor did the use of standard security procedures violate Plaintiff's right to reasonable conditions of confinement.  "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment."  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  Under either standard, the objective component considers the nature of the dangers created by the conditions alleged.  "[A] pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."  *Kingsley v Hendrickson*, 576 U.S. 389, 398 (2015).

The subjective component addresses whether a defendant possessed the requisite state of mind, however "an objective standard is appropriate in the context of . . . claims brought by pretrial detainees pursuant to the Fourteenth Amendment."  *Id.*

10

> [T]o establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety. In other words, the "subjective prong" (or "mens rea prong") of a deliberate indifference claim is defined objectively.

*Darnell*, 849 F.3d at 35.

Plaintiff's experience was no doubt unpleasant, but the factual allegations of the Complaint do not set forth sufficiently serious conditions of confinement or support an inference of deliberate indifference.  Plaintiff was a non-prisoner but properly subjected to secure transport and all the attendant consequences involved in secure transport. There was no requirement that Defendants order individualized and direct transport rather than use the existing system for secure movement of inmates and detainees from one facility to another.   "Plaintiff's broad allegations regarding the deprivation of food, bathroom breaks, and unreasonable safety, over a relatively brief, finite period . . . fail to rise to a level sufficient to sustain claim for a due process violation under the Fourteenth Amendment."  *Amberslie v. Prisoner Transp. Serv. of Am.*, LLC, 917CV0564TJMDEP, 2019 WL 1024183, at *12 (N.D.N.Y. Mar. 4, 2019), report and recommendation adopted, 917CV0564TJMDEP, 2019 WL 1368860 (N.D.N.Y. Mar. 26, 2019).  Although Plaintiff's transport took longer than the trip in *Amberslie*, this is largely due to the pause over a weekend, in which Plaintiff's primary complaint was the lack of showers.   But the "temporary deprivation of showers" does not meet either the subjective or objective test regarding conditions of confinement.  *See, generally, Jabot v. MHU Counselor Roszel*, 14 CV 3951 (VB), 2016 WL 6996173, at *5 (S.D.N.Y. Nov. 29, 2016) (collecting cases regarding toiletries and showers, although in an Eighth Amendment context).

Finally, even assuming *arguendo* that the 6-day transport constituted additional punishment, Plaintiff has not alleged a constitutional violation.  Plaintiff was properly subjected to a 20-year prison sentence, and extending such a sentence an extra six days does not state a claim on which relied may be granted.  *See, e.g., Brims v. Burdi*, 03 CIV. 3159 (WHP), 2004 WL 1403281, at *2 (S.D.N.Y. June 23, 2004) (an extra six days of imprisonment beyond maximum expiration date did not state a constitutional violation). The proper analysis regarding the extension of a properly imposed prison sentence is under the Eighth Amendment: "[m]oreover, even if we were to assume that the unauthorized addition of five days to a six-year sentence did constitute cruel and unusual punishment, [the plaintiff] has failed to demonstrate that defendants were deliberately indifferent to his problem." *Calhoun v New York State Div. of Parole Officers*, 999 F2d 647, 654 (2d Cir. 1993).  Likewise, the addition of six days to Plaintiff's 20-year prison sentence does not state a claim of constitutional dimension.  However, leave to amend is granted.

### B.  Equal Protection Claim

Plaintiff also asserts an equal protection violation among his claims, alleging that Defendants deny prompt 24-hour transport to OMH facilities to civilly committed sex offenders but provide it to others.[3]  A state and its instrumentalities may not deny "any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV. At its core, equal protection prohibits the government from treating similarly situated persons differently.  *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Sound Aircraft Servs., Inc. v. Town of E. Hampton*, 192 F.3d 329, 335 (2d Cir.

---

[3] To the extent that Plaintiff implies that his transport represented unconstitutional punishment, those claims are addressed in subsection IV A, above.

1999); *Brady v. Town of Colchester*, 863 F.2d 205, 216 (2d Cir. 1988).  Generalized

allegations are insufficient to make out an equal protection claim.  *See Crawford-El v.*

*Britton*, 523 U.S. 574, 592 (1998) ("When intent is an element of a constitutional violation

. . . the primary focus is not on any possible animus directed at the plaintiff; rather, it is

more specific, such as an intent to disadvantage all members of a class that includes the

plaintiff").

      To state a claim that Defendants' conduct violates his equal protection rights,

Plaintiff must allege that:

> (1) compared with others similarly situated, [plaintiff] was selectively
> treated, and (2) the selective treatment was motivated by an intention to
> discriminate on the basis of impermissible considerations, such as race
> or religion, to punish or inhibit the exercise of constitutional rights, or by
> a malicious or bad faith intent to injure the person.

*FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992) (citing *Wayte v. United States*,

470 U.S. 598, 608-09 (1985)).  Further,

> [w]hen analyzing plaintiff's equal protection claim, it should be noted that
> plaintiff has been adjudicated as a "dangerous sex offender requiring
> commitment to a secured treatment facility" under a statutory provision
> arising out of specific findings that "sex offenders in need of civil
> commitment are a different population from traditional mental health
> patients, who have different treatment needs in particular vulnerabilities."

*McChesney v. Hogan*, 9:08-CV-0163 FJS/DEP, 2010 WL 3602660, at *14 (N.D.N.Y. Aug.

17, 2010), report and recommendation adopted, 9:08-CV-163, 2010 WL 3584360

(N.D.N.Y. Sept. 7, 2010) (quoting N.Y. Mental Hyg. Law § 10.01(g)).  To the extent that

Plaintiff alleges an equal protection violation in his secure transport between facilities, he

has not alleged different treatment that was not warranted by the security needs of his

specific circumstances.

Plaintiff's allegations of loss of property are also insufficient to suggest selective treatment, nor do they suggest motivation by impermissible considerations. First, the alleged violation of DOCCS regulations does not represent a cognizable constitutional claim. *See Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995); *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir.), *cert. denied*, 484 U.S. 896 (1987); *Concourse Rehabilitation & Nursing Center, Inc. v. DeBuono*, 179 F.3d 38, 43 (2d Cir. 1999) ("As we repeatedly have explained, the failure of a State authority to comply with State regulations cannot alone give rise to a § 1983 cause of action"); *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) ("[A] state authority's failure to comply with its own statutory regulations does not facially implicate an interest secured by the laws of the United States in order to assert a § 1983 claim"). Further, "Plaintiff's allegation that the defendants [denied him equal protection] is entirely conclusory, with no facts to support any claim that he was discriminated against." *Brooks v. Hogan*, 915CV0090BKSTWD, 2016 WL 11662110, at *5 (N.D.N.Y. Feb. 24, 2016). Plaintiff's allegation that other civilly committed individuals told him that they also lost property is merely consistent with the very common complaint that property is lost during the transfer of individuals from one facility to another, and is thus subject to dismissal for failure to state a claim. However, leave to amend is granted.

### C.  Due Process Claims Regarding Loss of Property

Plaintiff alleges two instances of lost property: the excess property he was unable to fit in the four permitted transport bags that was destroyed before he left Collins, and the fourth bag, which was apparently lost at Ulster and clearly lost during Plaintiff's transfer. Plaintiff thus alleges that he has been deprived of his property in violation of his

Fourteenth Amendment right to due process and equal protection of the laws.  It has long

been held that:

> an unauthorized intentional deprivation of property by a state employee
> does not constitute a violation of the procedural requirements of the Due
> Process Clause of the Fourteenth Amendment if a meaningful post-
> deprivation remedy for the loss is available.

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  New York provides such a remedy in § 9

of the New York Court of Claims Act.  Assuming that Plaintiff was deprived of property

within the meaning of the Fourteenth Amendment, the deprivation was not without due

process of law because New York provides an adequate post-deprivation remedy.  *Love

v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983).

Plaintiff seeks to avoid the implications of this general rule by alleging that the

deprivations were not random and unauthorized, but rather, were part of a "systemic and

on-going practice," and that those held at CNYPC "have no meaningful remedy to recover

or make claims against DOCCS regarding their lost or missing property."  Complaint at

24 ¶ 121.  This latter claim is belied by the award of $100 in damages for lost property,

which Plaintiff rejected as insufficient.  Plaintiff was thus given the process he was due,

and he has not plausibly alleged that CNYPC inmates are unable to seek compensation.

With regard to the allegation that there is a systemic loss of property, Plaintiff

alleges only that he has spoken to others at CNYPC who also lost property in transit.  This

is insufficient to give rise to an inference that the loss of Plaintiff's fourth bag in transit, or

the losses of property by the others, were not random and unauthorized requiring due

process before the loss.  *See, e.g. Zinermon v. Burch*, 494 U.S. 113, 129 (1990) ("The

very nature of a negligent loss of property made it impossible for the State to predict such

deprivations and provide predeprivation process.").  That some others have also lost

property is not, without more, a showing that the losses were not random and unauthorized. "Plaintiff has not pleaded any facts that would indicate that the deprivation was authorized or the result of an established state procedure." *Wahid v. Mogelnicki*, 406 F. Supp. 3d 247, 250 (E.D.N.Y. 2017).

Indeed, Plaintiff's description of the many and varied explanations for the missing fourth bag, and the claim that it had in fact been found and returned to Collins, give rise to a strong inference that the loss of the bag was not authorized and was regarded by those involved as something which required an explanation. That Plaintiff rejected the award of $100 for the lost bag does not suggest that he was denied a post-deprivation remedy. Plaintiff is entitled to process, not to a specific result. *See Flemming v Goord*, 9:06-CV-562, 2009 WL 4667108, at *5 (N.D.N.Y. Dec. 8, 2009) ("If [plaintiff] lost the action in the Court of Claims, that would not entitle him to seek federal relief as there was an adequate state court remedy available which [plaintiff] unsuccessfully pursued.").

Plaintiff also claims that his property at Collins was in excess of the four draft bags that he was permitted to bring with him in the transfer to CNYPC, and that the excess was improperly destroyed as punishment for being a civilly confined sex offender. However, under DOCCS Directive 4913, all inmates are continuously restricted to property not in excess of four draft bags of property,[4] and the disposition of the excess is set forth in 4913 III-D. To the extent that Defendants followed Directive 4913, Plaintiff's possession of excess property was in violation of DOCCS directives and the destruction of his property was a consequence of that violation. To the extent that Defendants did not follow

---

[4] "No inmate shall possess property (combined State and personal property) including legal material, in excess of that which can be placed in four (4) standard Departmental draft bags." DOCCS Directive 4913 III. *See, e.g., Amaker v. Fisher*, 07-CV-0279(SR), 2010 WL 2572936, at *1 (W.D.N.Y. June 23, 2010), *aff'd sub nom. Amaker v. Fischer*, 453 F. App'x 59 (2d Cir 2011).

DOCCS policies, the destruction of his property was random and unauthorized, and Plaintiff had an adequate post-deprivation remedy for the loss of that property.

Additionally, as to the excess property that was destroyed, Plaintiff claims that the letter from Collins addressing his complaint arrived in an untimely fashion and with a false date, preventing him from seeking post-deprivation relief.  However, if Plaintiff's time to pursue a post-deprivation remedy had expired, the arrival of a letter *after* that time is not what prevented him from fulfilling the state's procedural requirements.  The availability of a state remedy precludes "resort to Section 1983 . . . even where the plaintiff had failed to bring a timely state proceeding."  *Irwin v City of New York*, 902 F Supp 442, 448 (S.D.N.Y. 1995) (citing *Campo v. New York City Employees' Retirement System*, 843 F.2d 96 (2d Cir.), *cert. den.*, 488 U.S. 889 (1988)).  Plaintiff thus had an adequate remedy under state law, even if he failed to use it properly, and the claims regarding the conversion of Plaintiff's property are hereby dismissed with leave to amend.

### D.  John Doe and Jane Doe Defendants

Plaintiff names various John and Jane Doe officials as Defendants in this action. Complaint at 1.  If Plaintiff does not know the name of a specific individual whom he contends is responsible for a particular constitutional deprivation, he may name this individual as a John Doe or Jane Doe defendant, but he must provide sufficient information about the defendants to distinguish them from other individuals.  Thus, in his Amended Complaint, to the extent possible, Plaintiff should indicate the shift and specific location worked or position held by the defendant on the date of the occurrence, provide a physical description of the defendant, and include any other information that would tend to identify the defendant.

## CONCLUSION

For the reasons set forth above, the Complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), unless Plaintiff files an amended complaint within **45 days of the entry date of this Decision and Order**, in which he includes the necessary allegations regarding his claims as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint is intended to **completely replace** the prior complaint in the action.  "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."  *Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (*quoting Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  Therefore, Plaintiff's amended complaint must include all of the allegations against each of the Defendants, so that the amended complaint may stand alone as the sole complaint in this action which the Defendants must answer.

## ORDERS

IT HEREBY IS ORDERED, that Plaintiff's motion for reconsideration (Docket Item 5) is GRANTED, and Plaintiff is granted permission to proceed *in forma pauperis*;

FURTHER, that Plaintiff is granted leave to file an amended complaint as directed above within **45 days of the entry date of this Order**;

FURTHER, that the Clerk of Court is directed to send to Plaintiff with this Decision and Order a copy of the original Complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that in the event Plaintiff fails to file an amended complaint as directed, the Complaint is dismissed with prejudice for failure to state a claim upon which relief may be granted, and the Clerk of Court is directed to close this case as dismissed without further order of the court;

FURTHER, that in the event the Complaint is dismissed because an amended complaint has not been filed as directed, the court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge

DATED:        December 9, 2020
              Buffalo, NY